IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | CR No.: 3:18-1060-JFA |
| | ) | |
| v. | ) | MEMORANDUM OPINION |
| | ) | AND ORDER |
| MICHAEL CALVIN | ) | |
| _____ | ) | |

This matter is before the court on the defendant's *pro se* motion for a reduction in his sentence pursuant to the First Step Act of 2018 and 18 U.S.C. § 3582(c)(1)(A) (ECF No. 171). Seeking compassionate release, the defendant states that his medical conditions and the threat of COVID-19 constitute an extraordinary and compelling reason for his immediate release.

The government opposes the defendant's motion, arguing that the defendant has not shown an extraordinary and compelling reason. Additionally, the government asserts that the statutory sentencing factors under 18 U.S.C. § 3553(a) do not weigh in favor of the defendant's release. The defendant filed a reply to the government's response.

The court has carefully considered the record before it and conducted an individualized analysis of the facts and issues raised by the parties. For the reasons which follow, the defendant's motion is respectfully denied.

STANDARD OF REVIEW

Ordinarily, a court "may not modify a term of imprisonment once it has been imposed." 18 U.S.C. § 3582(c); *See United States v. Chambers*, 956 F.3d 667, 671 (4th Cir. 2020); *United States v. Jackson*, 952 F.3d 492 (4th Cir. 2020); *United States v. Martin*, 916 F.3d 389, 395 (4th Cir. 2019). But, "the rule of finality is subject to a few narrow exceptions." *Freeman v. United States*, 564 U.S. 522, 526 (2011). One such exception is when the modification is "expressly permitted by statute." 18 U.S.C. § 3582(c)(1)(B); *See Jackson*, 952 F.3d at 495.

Commonly termed the "compassionate release" provision, § 3582(c)(1)(A)(i) provides a statutory vehicle to modify a defendant's sentence. It was originally adopted as part of the Sentencing Reform Act of 1984.

On December 21, 2018, the First Step Act was signed into law. Broadly, the Act's goals were to reform federal prisons and sentencing laws to reduce recidivism, decrease the federal inmate population, and maintain public safety. The First Step Act also expanded the existing compassionate release provisions of federal law by allowing an inmate to move for compassionate release himself, rather than allowing only the Director of the Bureau of Prisons (BOP) to do so. The relevant portion of the First Step Act, codified at 18 U.S.C. § 3582(c)(1)(A), as amended by § 603(b) of the First Step Act, provides:

> [T]he court, . . . upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier, may reduce the term of imprisonment . . . after considering the

> factors set forth in section 3553(a) [of Title 18] to the extent that they are applicable, if it finds that . . . extraordinary and compelling reasons warrant such a reduction . . . and that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission.

18 U.S.C. § 3582(c)(1)(A).

By its terms, § 3582(c)(1)(A) permits the court to reduce the defendant's term of imprisonment after considering the factors set forth in 18 U.S.C. § 3553(a) if the court first finds that (i) extraordinary and compelling reasons warrant such a reduction; and (ii) such a reduction is consistent with applicable policy statements issued by the Sentencing Commission. In addition, a district court may not grant a sentence reduction under § 3582(c)(1)(A) without considering the § 3553 factors to the extent they are applicable. *United States v. Kibble*, 992 F.3d 326, 332 (4th Cir. 2021).

In *United States v. McCoy*, 981 F.3d 271 (4th Cir. 2020), the Fourth Circuit agreed with the Second Circuit in *United States v. Brooker*, 976 F.3d 228 (2d Cir. 2020) and found that there is, as of now, no "applicable policy statement governing compassionate release motions filed by defendants under the recently amended § 3582(c)(1)(A)." As a result, district courts are "empowered . . . to consider any extraordinary and compelling reason for release that a defendant might raise." *McCoy*, 981 F.3d at 284 (citing *Brooker*, 976 F.3d at 230); *see also, Kibble*, 992 F.3d at 331.

A defendant's rehabilitation standing alone does not provide sufficient grounds to warrant a sentence modification. 28 U.S.C. § 994(t). Also, the defendant bears the burden to establish that he or she is eligible for a sentence reduction. *United States v. Jones*,

3

836 F.3d 896, 899 (8th Cir. 2016).

When deciding whether to reduce a defendant's sentence under § 3582(c)(1)(A), a district court generally proceeds in three steps. *See United States v. High*, 997 F.3d 181, 185–86 (4th Cir. 2021). First, the court determines whether "extraordinary and compelling reasons" support a sentence reduction. Next, the court considers whether a sentence reduction is consistent with applicable policy statements issued by the Sentencing Commission. As noted previously in this order and as set out in *McCoy*, because there is no applicable policy statement governing compassionate release motions filed by defendants under the recently amended § 3582(c)(1)(A), district courts are empowered to consider any extraordinary and compelling reason for release that a defendant might raise. Finally, if the court finds that extraordinary and compelling reasons warrant relief, the court must consider the § 3553(a) factors in deciding whether to exercise its discretion to reduce the defendant's term of imprisonment.

Even if the defendant meets the eligibility criteria for compassionate release, this court retains discretion as to whether to grant relief. *See* 18 U.S.C. § 3582(c)(1)(A) (providing the court *may* reduce the term of imprisonment) (emphasis added).

### *Exhaustion of Administrative Remedies*

Before a court may consider a defendant's motion for compassionate release, the defendant must have completed the initial step of requesting that the BOP bring a motion on their behalf. The defendant may file a motion with the court after (1) fully exhausting all administrative rights to appeal; or (2) after the lapse of 30 days from the receipt of such a

request by the warden of the defendant's facility, whichever is earlier. 18 U.S.C. § 3582(c)(1)(A). *See United States v. Muhammad*, 16 F.4th 126, 129 (4th Cir. 2021).

It appears to this court that the defendant has fully exhausted his administrative remedies, and the government concedes the same. Therefore, the court will proceed to review the matter on the merits.

## DISCUSSION

The mere existence of the COVID-19 pandemic—which poses a threat to every non-immune individual in the world—cannot independently provide a basis for a sentence reduction or justify compassionate release. However, COVID-19 is certainly relevant to the court's analysis of a § 3582(c)(1)(A) motion for compassionate release. If a defendant has a chronic medical condition that has been identified by the Centers for Disease Control (CDC) as elevating the inmate's risk of becoming seriously ill from COVID-19, it is possible that such medical condition could satisfy the extraordinary and compelling reasons standard. As the Third Circuit has held, "the mere existence of COVID-19 in society and the possibility that it may spread to a particular prison alone cannot independently justify compassionate release." *United States v. Raia*, 954 F.3d 594, 597 (3d Cir. 2020).

Rather, the threshold questions are whether the defendant has a particularized risk of contracting COVID-19 in prison and whether his medical conditions render him particularly susceptible to severe illness or death should he contract the virus. *See United States v. Youngblood*, No. 20-7836, 2021 WL 4167105, at *2 (4th Cir. Sept. 14, 2021) (citing *United States v. High*, 997 F.3d 181, 185 (4th Cir. 2021)).

5

*The Defendant's Motion for Compassionate Release*

The defendant contends that he suffers from the following medical problems: Type I diabetes, kidney disease (stage 3), high blood pressure, a thyroid problem, neuropathy and high cholesterol. He contends that these conditions, individually or collectively, make him particularly vulnerable to becoming seriously ill from COVID. He seeks his immediate release or, alternatively, a sentence of home confinement.

The government's response brief takes a somewhat ambiguous position regarding the defendant's medical conditions. The government notes that the defendant's medical ailments are apparently well-controlled while incarcerated and do not present any impediment to his ability to provide self-care while at the Bureau of Prisons (BOP). The government does, however, acknowledge that the defendant's chronic kidney disease presents a risk factor that has been identified by the CDC as heightening the risk of severe injury or death from COVID-19.

As an initial proposition, the court feels compelled to note that the defendant's Presentence Report (PSR) prepared in 2020, reveals that the defendant had <u>every one</u> of these medical problems when he committed the crimes that resulted in his current sentence. Thus, an argument could be made that it would be a perverse system of justice to allow a defendant with a substantial criminal record to commit yet another crime and then, upon sentencing, argue for his immediate release, relying upon medical conditions that pre-dated his current offense. This would result in sentencing disparity because it would allow individuals who have severe medical problems the ability to seek leniency at sentencing, whereas healthy

6

individuals who commit the same crimes do not have the same opportunity.

In any event, the court will afford the defendant the benefit of the doubt and assume that his current medical conditions, coupled with the ongoing COVID-19 pandemic, constitute an extraordinary and compelling reason for consideration of his release.

However, the court's inquiry does not end here. Under Fourth Circuit guidance, this court must now make an individualized assessment of the defendant's case, with specific attention to the factors under 18 U.S.C. § 3553(a), and also with particular review of the defendant's post-sentencing conduct while incarcerated.

Taking the § 3553(a) factors in order, the court finds as follows:

1.  *Nature and Circumstances of the Offense*.  After having been convicted of multiple felony offenses which were punishable by terms of imprisonment exceeding one year, the defendant possessed firearms and ammunition on at least three different occasions: May 25, 2017; August 17, 2017; and December 27, 2018. At the time the defendant possessed the firearms and ammunition, he knew his multiple prior felony convictions prohibited him from possessing them.  At least one firearm and/or some of the ammunition possessed by the defendant had traveled in interstate and/or foreign commerce. One of the firearms the defendant possessed had been reported stolen and the defendant possessed the firearms and ammunition in connection with other felony offenses involving drug distribution and/or possession. This was proven by investigative reports, the government's witnesses, controlled purchases, and physical evidence seized during the investigation.

7

With regarding to the instant criminal case, the defendant was one of two individuals named in an 11-count Superseding Indictment filed in August 2019. The defendant was charged with the following:

Count 1:   Conspiracy to possess with intent to distribute and distribute a quantity of cocaine base, in violation of 21 U.S.C. § 846;

Count 2:   Possession with intent to distribute and distribution of a quantity of marijuana, in violation of 21 U.S.C. 841(a)(l) and 841(b)(l)(D);

Count 3:   Felon in possession of firearm and ammunition, in violation of 18 U.S.C. §§ 922(g)(1) and 924(a)(2) and 924(e);

Count 4:   Knowingly using and carrying a firearm during and in relation to, and possession of a firearm in furtherance of, a drug trafficking crime, in violation of 18 U.S.C. § 924(c)(1)(A);

Count 5:   Possession with intent to distribute and distribution of cocaine base, in violation of 21 U.S.C. §§ 841(a)(l) and 841(b)(l)(C);

Count 6:   Knowingly using and carrying a firearm during and in relation to, and possession of a firearm in furtherance of, a drug trafficking crime as set out in Count 5, in violation of 18 U.S.C. § 924(c)(1)(A) and 2;

Count 7    Knowingly use and carry a firearm during and in relation to, and to possess a firearm in furtherance of, a drug trafficking crime as set forth in Count 5, in violation of 18 U.S.C. § 924(o); and

Count 11:  Knowingly being a felon in possession of firearm and ammunition, in violation of 18 U.S.C. §§ 922(g)(1) and 924(a)(2) and 924(e).

The defendant entered into a written Plea Agreement (ECF No. 113) in which he pleaded guilty to Count 3 of the Superseding Indictment. The government agreed to dismiss

the remaining Counts.

The United States Probation Office prepared a Presentence Investigation Report (PSR) (ECF No. 140) which determined the defendant's base offense level to be 26. The defendant also received sentencing enhancements for possession of a stolen firearm and possessing a firearm while selling marijuana and cocaine base on separate occasions. His criminal history category was VI. The defendant's Guideline range after acceptance was 120 to 150 months. However, as a result of the statutory cap, the defendant's Guideline term was 120 months imprisonment.

In January 2020, the court granted the defendant's oral motion for a variance and sentenced him to 108 months imprisonment—which was below the mandatory minimum and below the low end of the Guideline range—to be followed by 3-year term of supervised release.

The defendant did not appeal his judgment and conviction.

In August 2021, the government filed a motion to further reduce the defendant's sentence, which this court granted. An amended judgment was entered reducing the defendant's sentence to 96 months, with all other provisions to remain.

2. *History and Characteristics of the Defendant*. The defendant is currently 47 years old. He has served approximately 24 months of his 96-month sentence. His projected release date is April 18, 2026. He is housed at Federal Correctional Institution Butner Medium II in North Carolina.

The defendant's prior criminal convictions include the following: two counts of Breaking into Motor Vehicle or Tanks, Pumps, Where Fuel Lubricants Stored and Grand Larceny, Value More Than $200.00 (SC 1991); Criminal Conspiracy (SC 1991); two counts of Assault and Battery with Intent to Kill (SC 1992); False Information to Officer (SC 1998); Shoplifting, Value $1,000.00 or Less (SC 2001); Shoplifting (SC 2001); Interference or Hindering Officers (SC 2001); Shoplifting, Less Than $2,000.00 (SC 2003); two counts of Shoplifting, Less Than $2,000.00 (SC 2004); two counts of Distribution of Crack Cocaine (SC 2005); two counts of Burglary, Third Degree (SC 2005); five counts of Petty Larceny, Less Than $1,000.00 (SC 2005); Breaking into Motor Vehicle or Tanks, Pumps, Where Fuel Lubricants Stored and Forgery (SC 2005); three counts of Malicious Injury to Animals, Personal Property, Injury Value $1,000.00 or Less (SC 2005); Giving False Information to Law Enforcement, Fire Department or Rescue Department (SC 2009); Resisting Arrest (SC 2010); Petit or Simple Larceny, $2,000.00 or Less (SC 2011); Shoplifting, Less Than $2,000.00 (SC 2011); two counts of Burglary, Third Degree (SC 2013); Possession of Crack, Second Offense (SC 2013); Simple Possession of Marijuana and two counts of Giving False Information to Law Enforcement, Fire Department, or Rescue Department (SC 2015); Driving Under the Influence Less Than .10, First Offense (SC 2015); Giving False Information (SC 2016); Shoplifting, Value $2,000.00 or Less (SC 2017); and numerous traffic offenses.

The defendant has never been married. He has four children. He received his high school diploma and has been self-employed as a mechanic and pressure washer for most of

his adult life. The defendant was raised by both of his parents in Clarendon County, South Carolina and maintains positive relationships with his parents and two siblings. There is no reported history of abuse during his formative years.

*Post Sentencing Conduct*

Since his January 23, 2020 sentencing in this case, the defendant has had two recent disciplinary infractions (in May 2021) while incarcerated: (1) possessing alcohol/drugs (level 113); and being insolent to a staff member (level 312).

The BOP vocational/educational record reveals that the defendant has taken various advanced educational courses such as math skills, career readiness, the reform movement, nutrition, exercise, and stress management. He also has completed the Drug Abuse Education course.

The defendant's motion states that he has primary medical care arranged for if released, and that he has many family and friends who would support him and assist him with his medical needs. In addition, his fiancee is the owner of the property where he would reside in Columbia, South Carolina.

3. *Seriousness of the Crimes*. As evidence by the historical facts set out in the PSR involving the defendant's instant conviction, this court regards the defendant's crime as very serious, fully supportive of a significant sentence. An argument could be made that the mere possession of firearm by a convicted felon is not a serious offense. However, coupled with the defendant's extensive criminal history, outlined herein, the court concludes that the defendant's crime at issue was of a most serious nature.

4. *Whether the Sentence Promotes Respect for the Law and Just Punishment for the Offense*. The court finds a significant sentence is necessary to promote respect for the law and just punishment.

5. *Whether the Sentence Affords Adequate Deterrence to Criminal Conduct*. The court finds that a significant sentence is necessary to provide both general and specific deterrents.

6. *Whether the Sentence Protects the Public from Future Crimes of the Defendant.* The court finds that a significant sentence is necessary to protect the public from future crimes of the defendant. The court views this as an important factor to be addressed in considering the present motion. This is perhaps one of the most important factors counseling against the defendant's immediate release. The defendant's criminal history, in particular, clearly demonstrates that his immediate release at this time would not be appropriate. The defendant's 23 convictions involve matters such as grand larceny, assault and battery with intent to kill, interfering with a police officer, distribution of crack cocaine, burglary, malicious injury to animals, giving false information to law enforcement, possession of crack cocaine, second offense, two more counts of giving false information to law enforcement and driving under the influence. Thus, the defendant has multiple felony convictions on his record and clearly should not have possessed the three weapons at issue in this case.

It should be emphasized that this case was not a "light weight" felon-in-possession case that involved, for example, a long distance truck driver who had a shotgun in the closet of his home for the protection of his spouse while he was away from home. The defendant

possessed three weapons and used them in connection with several federal criminal offenses. At least one of the firearms was stolen.

7. *Need to Avoid Unwarranted Disparity*. Viewing the defendant's sentence as compared with the culpability of the defendant and his associates, his imposed sentence was and is in line with the other co-defendants.

## CONCLUSION

For the foregoing reasons, the court determines that, even assuming the defendant has demonstrated an extraordinary and compelling reason for his release due to his medical conditions, his release at this time is not appropriate in light of this court's individualized assessment of the § 3553(a) factors, including the defendant's post-sentencing conduct. The motion is respectfully denied.[1] (ECF No.171).

IT IS SO ORDERED.

January 10, 2022
Columbia, South Carolina

*Joseph F. Anderson, Jr.*
Joseph F. Anderson, Jr.
United States District Judge

---

[1] To the extent that the defendant seeks to have this court direct the BOP to place the defendant in home confinement, this court is without authority to do so. The discretion to release a prisoner to home confinement lies solely with the Attorney General. See 18 U.S.C. § 3624(c)(2); 34 U.S.C. § 60541(g). The legislation recently passed by Congress to address the COVID-19 pandemic does not alter this. See CARES Act, Pub. L. No. 116-136, 134 Stat 281, 516 (2020) ("During the covered emergency period, if the Attorney General finds that emergency conditions will materially affect the functioning of the Bureau [of Prisons], the Director of the Bureau may lengthen the maximum amount of time for which the Director is authorized to place a prisoner in home confinement under the first sentence of section 3624(c)(2) of title 18, United States Code, as the Director determines appropriate.")