IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA

| | |
|---|---|
| UNITED STATES OF AMERICA )<br>)<br>v.  )<br>)<br>MICHAEL CALVIN )<br>_____ ) | CR No.: 3:18-1060-JFA<br><br>MEMORANDUM OPINION<br>AND ORDER |

This matter is before the court on the defendant's second *pro se* motion[1] for a reduction in his sentence pursuant to the First Step Act of 2018 and 18 U.S.C. § 3582(c)(1)(A) (ECF Nos. 211, 230). Seeking compassionate release, the defendant states that his serious medical conditions and the threat of COVID-19 constitute an extraordinary and compelling reason for his immediate release.

The government opposes the defendant's motion, arguing that the defendant has not shown an extraordinary and compelling reason. Additionally, the government asserts that the statutory sentencing factors under 18 U.S.C. § 3553(a) do not weigh in favor of the defendant's release. The defendant replied to the government's response.

The court has carefully considered the record before it and conducted an individualized analysis of the facts and issues raised by the parties. For the reasons which follow, the defendant's motion is respectfully denied.

---

[1] The defendant appealed this court's denial of his first motion for compassionate release (ECF No. 202). The Fourth Circuit Court of Appeals affirmed this court's decision in its mandate of July 25, 2022 (ECF No. 210).

1

STANDARD OF REVIEW

Generally, a district court "may not modify a term of imprisonment once it has been imposed." 18 U.S.C § 3582(c); *see Dillon v. United States*, 560 U.S. 817, 824 (2010). However, the commonly termed "compassionate release" provision of § 3582(c)(1)(A)(I) provides a statutory vehicle to modify a defendant's sentence. Under this statute, a district court may reduce a criminal defendant's sentence if the court finds extraordinary and compelling reasons that warrant such a reduction after considering the factors set forth in 18 U.S.C. § 3553(a), to the extent that they are applicable, as well as "applicable policy statements issued by the Sentencing Commission." 18 U.S.C. § 3582(c)(1)(A).

Prior to the First Step Act of 2018, courts could only consider compassionate release upon motion of the Bureau of Prisons (BOP). *See United States v. McCoy*, 981 F.3d 271 (4th Cir. 2020). Today, however, § 3582(c)(1)(A) allows a defendant to file his own motion for compassionate release directly with the federal court so long as he first fully exhausts all administrative remedies.

Although Congress did not define "extraordinary and compelling" reasons in § 3582(c)(1)(A), the Sentencing Commission addressed the issue in a Policy Statement— United States Sentencing Guideline (U.S.S.G.) § 1B1.13—which provided the BOP with several categories of "extraordinary and compelling reasons" to consider. *McCoy*, 981 F.3d at 276.

For years following the passage of the First Step Act in 2018, the Sentencing Commission did not update § 1B1.13 to account for motions filed directly by defendants, meaning that the policy did not bind the courts when presented with a defendant's motion for compassionate release. *Id*. at 281– 82, 284.  A court, therefore, remained "empowered . . . to consider any extraordinary and compelling reason for release that a defendant might raise." *Id*. at 284 (quoting *United States v. Brooker*, 976 F.3d 228, 230 (2d Cir. 2020)) (alteration and emphasis in original).

However, on November 1, 2023, the Sentencing Commission, via Amendment 814, amended U.S.S.G. §1B1.13(b)(1)–(6) to address compassionate release motions brought directly by a defendant and to clarify and expand the list of what may qualify as an extraordinary and compelling reason to support a sentence reduction.  The qualification list falls into several categories: (1) the defendant's medical circumstances; (2) the defendant's age; (3) the defendant's family circumstances; (4) whether the defendant was the victim of certain abuse while in custody; (5) any other circumstances or combination of circumstances that, when considered by themselves or together with any of the preceding categories, are similar in gravity; and (6) an unusually long sentence if the defendant meets certain conditions.  The policy statement also recognizes the possibility that the BOP could identify other grounds that amount to extraordinary and compelling reasons.

Courts may not modify a sentence once imposed with few exceptions. 18 U.S.C. § 3582(c). One exception is compassionate release under 18 U.S.C. § 3582(c)(1)(A), as

amended by the First Step Act. To grant a compassionate release motion under § 3582(c)(1)(A)(i), the district court must conduct a two-step analysis. *United States v. Centeno-Morales*, 90 F.4th 274, 279 (4th Cir. 2024). First, the court must find "extraordinary and compelling reasons" warranting a sentence reduction. *United States v. Hargrove*, 30 F.4th 189, 194–95 (4th Cir. 2022). After a district court finds that an "extraordinary and compelling" reason for sentence modification exists, it must then evaluate the relevant § 3553(a) factors. *Id*. at 195.

When deciding whether to reduce a defendant's sentence under § 3582(c)(1)(A), a district court generally proceeds in three steps. First, the court determines whether extraordinary and compelling reasons support a sentence reduction. Next, the court considers whether a sentence reduction is consistent with the applicable policy statements issued by the Sentencing Commission. Finally, if the court finds that an extraordinary and compelling reason warrants relief, the court must consider the § 3553(a) factors in deciding whether to exercise its discretion to reduce the defendant's term of imprisonment. *See United States v. High*, 997 F.3d 181, 185–86 (4th Cir. 2021); *United States v. Kibble*, 992 F.3d 326 (4th Cir. 2021). The court must also determine that such a reduction would be consistent with "applicable policy statements issued by the Sentencing Commission." *United States v. Davis*, 99 F.4th 647, 654 (4th Cir. 2024).

Even if the defendant meets the eligibility criteria for compassionate release, this court retains discretion as to whether to grant relief. *See* 18 U.S.C. § 3582(c)(1)(A) (providing the

court *may* reduce the term of imprisonment) (emphasis added).

Finally, the defendant bears the burden to establish that he is eligible for a sentence reduction under § 3582. *Centeno-Morales*, 90 F.4th at 279.

*Exhaustion of Remedies*

Before a court may consider a defendant's motion for compassionate release, the defendant must have completed the initial step of requesting that the BOP bring a motion on his behalf. The defendant may file a motion with the court: (1) after fully exhausting all administrative rights to appeal; or (2) after the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier. *See United States v. Muhammad*, 16 F.4th 126, 129 (4th Cir. 2021), 18 U.S.C. § 3582(c)(1)(A).

The government does not dispute the defendant's claim that he has exhausted his administrative remedies. Thus, the court will proceed to review the matters on the merits.

DISCUSSION

The mere existence of the COVID-19 pandemic—which poses a threat to every non-immune individual in the world—cannot independently provide a basis for a sentence reduction or justify compassionate release. However, COVID-19 is certainly relevant to the court's analysis of a § 3582(c)(1)(A) motion for compassionate release. If a defendant has a chronic medical condition that has been identified by the Centers for Disease Control (CDC) as elevating the inmate's risk of becoming seriously ill from COVID-19, it is possible that such medical condition could satisfy the extraordinary and compelling reasons standard.

As the Third Circuit has held, "the mere existence of COVID-19 in society and the possibility that it may spread to a particular prison alone cannot independently justify compassionate release." *United States v. Raia*, 954 F.3d 594, 597 (3d Cir. 2020).

Rather, the threshold questions are whether the defendant has a particularized risk of contracting COVID-19 in prison and whether his medical conditions render him particularly susceptible to severe illness or death should he contract the virus. *See United States v. Youngblood*, No. 20-7836, 2021 WL 4167105, at *2 (4th Cir. Sept. 14, 2021) (citing *United States v. High*, 997 F.3d 181, 185 (4th Cir. 2021)).

*The Defendant's Medical Conditions*

The defendant contends that he suffers from the following medical problems: Type I diabetes, high blood pressure, thyroid problems, neuropathy, high cholesterol, and kidney disease (now stage IV). He contends that his kidney conditions have worsened and make him particularly vulnerable to becoming gravely ill from COVID. He seeks immediate release.

In the defendant's first motion for compassionate release (ECF No. 171), the government asserted that the defendant's medical ailments were well-controlled while incarcerated and do not present any impediment to his ability to provide self-care while at the Bureau of Prisons (BOP). The government did acknowledge at that time that the defendant's chronic kidney disease presented a risk factor that had been identified by the CDC as heightening the risk of severe injury or death from COVID-19.

The defendant is 51 years of age. Indeed, his chronic medical conditions are well documented in the record and when he was sentenced by this court. The Presentence Report (PSR) (ECF No. 140) prepared in 2020, noted that the defendant was in poor health and that he was diagnosed with an unspecified thyroid condition, neuropathy, high blood pressure, high cholesterol, stage III kidney disease, and type 1 diabetes. The defendant had these medical problems when he committed the crimes that resulted in his current sentence. Thus, an argument could be made that it would be a perverse system of justice to allow a defendant with a substantial criminal record to commit yet another crime and then, upon sentencing, argue for his immediate release, relying upon medical conditions that pre-dated his current offense. This would result in sentencing disparity because it would allow individuals who have severe medical problems the ability to seek leniency at sentencing, whereas healthy individuals who commit the same crimes do not have the same opportunity.

However, the court will give the defendant the benefit of the doubt and again assume that his medical conditions constitute an extraordinary and compelling reason for consideration of his release. This court recognizes that the defendant's chronic kidney disease presents a risk factor that has been identified by the CDC as heightening the risk of severe injury or death from COVID-19. The court will note, however, that on May 11, 2023, the United States Department of Health and Human Services ended the federal Public Health Emergency for COVID-19. The public health emergency prong in U.S.S.G. § 1B1.13 requires that the emergency be declared by an appropriate governmental authority. As of the

date of this order, there is no new declared emergency involving the BOP or the public in general.

This determination does not end the court's inquiry. Under Fourth Circuit guidance, the court must again examine the factors under 18 U.S.C. § 3553(a), together with the defendant's post-sentencing conduct, and any other mitigating factors, to determine if the defendant's immediate release is appropriate.

Taking the § 3553(a) factors in order, the court finds as follows:

1. *Nature and Circumstances of the Offense*. After having been convicted of multiple felony offenses which were punishable by terms of imprisonment exceeding one year, the defendant possessed firearms and ammunition on at least three different occasions: May 25, 2017; August 17, 2017; and December 27, 2018. At the time the defendant possessed the firearms and ammunition, he knew his multiple prior felony convictions prohibited him from possessing them. At least one firearm and/or some of the ammunition possessed by the defendant had traveled in interstate and/or foreign commerce. One of the firearms the defendant possessed had been reported stolen and the defendant possessed the firearms and ammunition in connection with other felony offenses involving drug distribution and/or possession. This was proven by investigative reports, the government's witnesses, controlled purchases, and physical evidence seized during the investigation.

Regarding the instant criminal case, the defendant was one of two individuals named in an 11-count Superseding Indictment filed in August 2019. The defendant was charged

with the following:

Count 1: Conspiracy to possess with intent to distribute and distribute a quantity of cocaine base, in violation of 21 U.S.C. § 846;

Count 2: Possession with intent to distribute and distribution of a quantity of marijuana, in violation of 21 U.S.C. 841(a)(l) and 841(b)(l)(D);

Count 3: Felon in possession of firearm and ammunition, in violation of 18 U.S.C. §§ 922(g)(1) and 924(a)(2) and 924(e);

Count 4: Knowingly using and carrying a firearm during and in relation to, and possession of a firearm in furtherance of, a drug trafficking crime, in violation of 18 U.S.C. § 924(c)(1)(A);

Count 5: Possession with intent to distribute and distribution of cocaine base, in violation of 21 U.S.C. §§ 841(a)(l) and 841(b)(l)(C);

Count 6: Knowingly using and carrying a firearm during and in relation to, and possession of a firearm in furtherance of, a drug trafficking crime as set out in Count 5, in violation of 18 U.S.C. § 924(c)(1)(A) and 2;

Count 7: Knowingly use and carry a firearm during and in relation to, and to possess a firearm in furtherance of, a drug trafficking crime as set forth in Count 5, in violation of 18 U.S.C. § 924(o); and

Count 11: Knowingly being a felon in possession of firearm and ammunition, in violation of 18 U.S.C. §§ 922(g)(1) and 924(a)(2) and 924(e).

The defendant entered into a written Plea Agreement (ECF No. 113) in which he pleaded guilty to Count 3 of the Superseding Indictment. The government agreed to dismiss the remaining Counts.

The United States Probation Office prepared a Presentence Investigation Report (PSR) (ECF No. 140) which determined the defendant's base offense level to be 26. The defendant also received sentencing enhancements for possession of a stolen firearm and possessing a firearm while selling marijuana and cocaine base on separate occasions. His criminal history category was VI. The defendant's Guideline range after acceptance was 120 to 150 months. However, as a result of the statutory cap, the defendant's Guideline term was 120 months imprisonment.

In January 2020, the court granted the defendant's oral motion for a variance and sentenced him to 108 months imprisonment—which was below the mandatory minimum and below the low end of the Guideline range—to be followed by 3-year term of supervised release.

The defendant did not appeal his judgment and conviction.

In August 2021, the government filed a motion to further reduce the defendant's sentence, which this court granted. An amended judgment was entered reducing the defendant's sentence to 96 months, with all other provisions to remain.

The defendant is currently housed at Butner FMC Medium and his anticipated date of release is May 1, 2026. He has served approximately 60 months of his 96-month sentence.

2. *History and Characteristics of the Defendant*. The defendant's prior criminal convictions include the following: two counts of Breaking into Motor Vehicle or Tanks, Pumps, Where Fuel Lubricants Stored and Grand Larceny, Value More Than $200.00 (SC

1991); Criminal Conspiracy (SC 1991); two counts of Assault and Battery with Intent to Kill (SC 1992); False Information to Officer (SC 1998); Shoplifting, Value $1,000.00 or Less (SC 2001); Shoplifting (SC 2001); Interference or Hindering Officers (SC 2001); Shoplifting, Less Than $2,000.00 (SC 2003); two counts of Shoplifting, Less Than $2,000.00 (SC 2004); two counts of Distribution of Crack Cocaine (SC 2005); two counts of Burglary, Third Degree (SC 2005); five counts of Petty Larceny, Less Than $1,000.00 (SC 2005); Breaking into Motor Vehicle or Tanks, Pumps, Where Fuel Lubricants Stored and Forgery (SC 2005); three counts of Malicious Injury to Animals, Personal Property, Injury Value $1,000.00 or Less (SC 2005); Giving False Information to Law Enforcement, Fire Department or Rescue Department (SC 2009); Resisting Arrest (SC 2010); Petit or Simple Larceny, $2,000.00 or Less (SC 2011); Shoplifting, Less Than $2,000.00 (SC 2011); two counts of Burglary, Third Degree (SC 2013); Possession of Crack, Second Offense (SC 2013); Simple Possession of Marijuana and two counts of Giving False Information to Law Enforcement, Fire Department, or Rescue Department (SC 2015); Driving Under the Influence Less Than .10, First Offense (SC 2015); Giving False Information (SC 2016); Shoplifting, Value $2,000.00 or Less (SC 2017); and numerous traffic offenses.

     The defendant has never been married. He has four children. He received his high school diploma and has been self-employed as a mechanic and pressure washer for most of his adult life. The defendant was raised by both of his parents in Clarendon County, South Carolina and maintains positive relationships with his parents and two siblings.

*Post Sentencing Conduct*

The government indicates that the defendant has not had any disciplinary infractions other than those noted in 2021 and 2022 (each time for possessing drugs/alcohol) which were grades as 100-level violations, the most serious violations at the BOP. He also had a violation for being insolent to a staff member (level 312).

The BOP vocational/educational record reveals that the defendant has taken various advanced educational courses such as math skills, career readiness, the reform movement, nutrition, exercise, and stress management. He also has completed the Drug Abuse Education course. The government also notes that the defendant was assigned to work as an orderly. Finally, the government states that the defendant remains at a high-risk recidivism level and is housed at a medium security level.

3. *Seriousness of the Crimes*. As evidenced by the historical facts set out in the PSR involving the defendant's instant conviction, this court regards the defendant's crime as very serious, fully supportive of a significant sentence. An argument could be made that the mere possession of firearm by a convicted felon is not a serious offense. However, coupled with the defendant's extensive criminal history, outlined herein, the court concludes that the defendant's crime at issue was of a most serious nature.

4. *Whether the Sentence Promotes Respect for the Law and Just Punishment for the Offense*. The court finds a significant sentence is necessary to promote respect for the law and just punishment.

5. *Whether the Sentence Affords Adequate Deterrence to Criminal Conduct*. The court finds that a significant sentence is necessary to provide both general and specific deterrents.

6. *Whether the Sentence Protects the Public from Future Crimes of the Defendant*. The court finds that a significant sentence is necessary to protect the public from future crimes of the defendant. The court views this as an important factor to be addressed in considering the present motion. This is perhaps one of the most important factors counseling against the defendant's immediate release. The defendant's criminal history, in particular, clearly demonstrates that his immediate release at this time would not be appropriate. The defendant's 23 convictions involve matters such as grand larceny, assault and battery with intent to kill, interfering with a police officer, distribution of crack cocaine, burglary, malicious injury to animals, giving false information to law enforcement, possession of crack cocaine, second offense, two more counts of giving false information to law enforcement and driving under the influence. Thus, the defendant has multiple felony convictions on his record and clearly should not have possessed the three weapons at issue in this case.

7. *Need to Avoid Unwarranted Disparity*. Viewing the defendant's sentence as compared with the culpability of the defendant and his associates, his imposed sentence was and is in line with the other co-defendants.

CONCLUSION

For the foregoing reasons, the court determines that, even assuming the defendant has demonstrated an extraordinary and compelling reason for his release due to his medical conditions, his release at this time is not appropriate in light of this court's individualized assessment of the § 3553(a) factors, including the defendant's post-sentencing conduct. The motions are respectfully denied. (ECF Nos. 211, 230).

IT IS SO ORDERED.

March 12, 2025
Columbia, South Carolina

Joseph F. Anderson, Jr.
United States District Judge